```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
IRA J. ALLEN, et al.                     :
                         Plaintiffs,     :     08 Civ. 6503
                                         :          (DLC)
            -v-                          :
                                         :     OPINION & ORDER
GORDON ROTH, et al.,                     :
                         Defendants.     :
-----------------------------------------X
```

Appearances:

Pro se plaintiffs:

Ira J. Allen
711 East 231st Street
Bronx, NY 10466

Milton Turner
545 Edgecombe Avenue, Apartment 3C
New York, NY 10032

Cyril Young
4125 44th Street, Apartment F9
Sunnyside, NY 11104

Richard Cisco
558 181st Street, Apartment 2M
Bronx, NY 10457

For defendants Gordon Roth Development Corporation, Gordon Roth, and Robert Roth:

Clifford E. Schwartz
Schwartz & Blumenstein
250 West 57th Street, Suite 1619
New York, NY 10107

DENISE COTE, District Judge:

Plaintiffs, who are officers in two music companies, have alleged that their landlord Gordon Roth Development Corporation ("GRDC"), its owner, Gordon Roth, and his son, Robert Roth (collectively, "Roth Defendants"), illegally evicted the plaintiffs from their office and destroyed their property, including master sound recordings, in the process of the eviction.  The Roth Defendants have moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P., or, in the alternative, for summary judgment pursuant to Rule 56, Fed R. Civ. P.  For the following reasons, their motion is granted under Rule 12(b)(6), Fed. R. Civ P.

## BACKGROUND

The following facts are taken from the amended complaint. The plaintiffs, Ira J. Allen, Richard Cisco, Milton Turner, and Cyril Young, are officers in Bun-Bun Music, Inc. ("Bun-Bun") and B-Boy Records and Associate, Inc. ("B-Boy").  GRDC, a New York corporation, is the landlord of the office at issue in this lawsuit, which is located on the third floor of 11-13 Bruckner Boulevard in Bronx, New York ("the office").

On July 12, 2008, an unidentified white male entered the office and asked Young if the plaintiffs intended to move out that day.  Young replied in the negative, and the unidentified

man next asked to speak with Allen.  Young demanded that the unidentified man produce identification, and the man then identified himself as "Robert [Roth]," the "landlord."  Robert Roth told Young that he was going to "tak[e] some stuff from the back rooms."  Roth then departed.  Ten minutes later, Young observed a truck placing a dumpster outside the office.  Young left to go to a restaurant with plaintiff Allen.  When they returned forty-five minutes later, Young and Allen found much of their property from the office in the dumpster, including CDs and cassettes containing master recordings.  They went upstairs to the office and, upon discovering that the door had been broken into and their property was missing, called 911, reporting to the operator that their office had been invaded by the landlord who was also destroying and stealing their property.  They asked the 911 operator to send the police.

   Young then encountered five men just outside the office and demanded that they produce an eviction warrant.  One of them, who identified himself as "Eddie," responded that "you owe us money."  Young called 911 and repeated Eddie's response to the operator.  Eddie and another man pushed Young out of the way and entered the office.  The two men proceeded to ransack the office, throwing computer equipment and paper on the ground, and yelling "you owe us rent!"  Young began calling 911 repeatedly and ran downstairs, where he flagged down a police car.  After

3

Young showed the police officer plaintiffs' property, now in the dumpster, the police officer asked Robert Roth whether he had a warrant to evict the plaintiffs.  When Robert Roth replied in the negative, the police officer told Robert Roth to cease dispossessing plaintiffs' property immediately.  As Robert Roth and the police officer entered the elevator leading up to the office, another police car arrived on the scene.  Young showed the dumpster to the newly arrived police officers, and the officers then went upstairs to the office to observe the condition of plaintiffs' property.  Robert Roth told the police he would place the property in the dumpster in storage, and the police departed.

Robert Roth then ordered the truck driver to leave with the dumpster.  Young unsuccessfully attempted to stop the truck.  When the police officers later returned to the scene, they learned that the truck had deposited the plaintiffs' property in the junk yard, where it had been destroyed.  The officers refused to make any arrests or write a report, informing Young that the dispute was "a civil matter."  After the plaintiffs wrote letters of complaint, the Captain of the 40th Precinct wrote plaintiff Allen a letter in response dated November 6, 2008, in which he "apologize[d] for any inconvenience in the delay of service."

The plaintiffs filed this lawsuit pro se on July 22, 2008, naming the City of New York and Deputy Inspector Ronald Mercandetti as defendants ("City Defendants"), in addition to GRDC and Gordon and Robert Roth.  The Roth Defendants answered the complaint on September 18.  An Order of January 26, 2009 directed the plaintiffs to serve the City Defendants or else risk dismissal of their claims against those two defendants.  When the plaintiffs did not serve the City Defendants, the City Defendants were dismissed from the lawsuit by an Order issued on March 5.

The remaining parties convened for a status conference on March 27.  At the conference, the plaintiffs were informed that, because both plaintiffs and defendants were New York residents, the plaintiffs would need to allege a claim arising under federal law if they wished to remain in federal court.  As their existing claims appeared to complain of their eviction from the office and the destruction of their property, it was unclear whether their case raised any issues of federal law, and, consequently, whether it could remain in federal court.  An Order issued the same day granted the plaintiffs leave to amend the complaint to state a claim arising under federal law.

On April 15, the plaintiffs filed the amended complaint. The amended complaint states that the Roth Defendants violated the following federal laws: the Fourteenth Amendment of the

5

Constitution; 42 U.S.C. § 1982; and Title 8 of the Civil Rights Act of 1968, also known as the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA").  On May 26, the Roth Defendants moved to dismiss or for summary judgment, arguing that the complaint stated no federal claims and that plaintiffs Allen, Cisco, and Turner had waived their claims against GRDC in a general release executed on March 27, 2009 as part of a settlement reached between GRDC and the plaintiffs resolving an ejectment proceeding brought by GRDC against the plaintiffs in Bronx County Civil Court.  The motion was fully briefed on July 31.

## DISCUSSION

The Roth Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., and for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.[1]  Under either provision, the rule that pleadings filed by pro se plaintiffs are construed liberally will apply.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  A court is obliged to construe pleadings filed by pro se plaintiffs liberally "particularly when they allege civil rights violations," as is the case here.

---

[1] They also seek summary judgment under Rule 56, Fed. R. Civ. P. It will be unnecessary to address that argument because the amended complaint will be dismissed based on the pleadings.

Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005) (citation omitted).

"Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

Once a plaintiff meets certain constitutional prerequisites, which are not at issue here, federal district courts have subject matter jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331.  Section 1331 provides for federal jurisdiction where a complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Bay Shore Union Free School Dist. v. Kain, 485 F.3d 730, 734 (2d Cir. 2007) (citation omitted). Federal district courts also have jurisdiction over claims asserting violations of federal civil rights laws pursuant to 28

U.S.C. § 1343.  United States v. Space Hunters, Inc., 429 F.3d 416, 426 (2d Cir. 2005).[2]

The Roth Defendants primarily argue that the amended complaint should be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P., because the federal claims it contains are so frivolous that they cannot support the exercise of subject matter jurisdiction.  Putative federal claims should not be dismissed on jurisdictional grounds unless they are found to be "not colorable, i.e., . . . immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous."  Barco-Sandoval v. Gonzales, 516 F.3d 35, 41 n.6 (2d Cir. 2008) (citation omitted).  The Roth Defendants' assertions that the plaintiffs have failed to allege a violation of law are also properly understood as arguments for dismissal of plaintiffs' federal claims for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.

A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all

---

[2] Neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1343, however, creates an independent cause of action supporting jurisdiction.  That is, if the plaintiffs have alleged a federal question or a violation of a civil rights statute, these statutes provide for jurisdiction.  See, e.g., Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc., 850 F.2d 876, 880 (2d Cir. 1988) (describing 28 U.S.C. § 1343 as the "jurisdictional counterpart" to a civil rights claim).

8

reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also South Cherry Street, LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009) (courts are to "assum[e] all 'well-pleaded factual allegations' to be true, and 'determin[e] whether they plausibly give rise to an entitlement to relief'") (citing Iqbal, 129 S.Ct. at 1950). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. 1949 (citation omitted). Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). A complaint must "give[ ] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (citation omitted).

1. The FHA Claim

The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin."  42 U.S.C. § 3604(a).  The FHA defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ."  42 U.S.C. § 3602(b); United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1218 (2d Cir. 1987).  The FHA does not define "residence."  When a statutory term is not explicitly defined, courts first look to the plain meaning of the term.  In re Renshaw, 222 F.3d 82, 88 (2d Cir. 2000) ("The analysis of any statute must begin, of course, with its plain language . . . .").  A "residence" clearly refers to a place where people live.

The amended complaint concerns an office, not a dwelling or a residence.  Even though "residence" is undefined, an office is not a residence under any reasonable definition of the term. Plaintiffs do not argue otherwise, suggest that they had been living in the property at issue, or contend that the office was designed or intended for residential use.  The FHA therefore does not give the plaintiffs a cause of action.

2. Section 1982

Section 1982 provides that "all citizens of the United States shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982; United States v. Nelson, 277 F.3d 164, 177 (2d Cir. 2002) ("[T]he Supreme Court has construed the section to forbid public and private racially discriminatory interference with property rights."). Section 1982 was enacted pursuant to the Thirteenth Amendment to the Constitution and applies to private action. Nelson, 277 F.3d at 177.

"A plaintiff states a viable cause of action under . . . [§] 1982 only by alleging a deprivation of his rights on account of his race, ancestry, or ethnic characteristics." Zemsky v. City of New York, 821 F.2d 148, 150 (2d Cir. 1987). See also Gomez-Perez v. Potter, 128 S.Ct. 1931, 1936 (2008). A plaintiff making a claim under § 1982 must allege that the discrimination is intentional, Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991), and a court may dismiss a plaintiff's claim under § 1982 if the plaintiff does not allege "that he was deprived of his rights as a result of any racial, ethnic, or class-based animus on the part of the defendants." Zemsky, 821 F.2d at 151.

The amended complaint does not allege a violation of § 1982 because it does not allege that any intentional discrimination

11

occurred, race-based or otherwise.  First, the amended complaint does not specify the "race, ancestry, or ethnic characteristics" of the plaintiffs.  Id.  It mentions that Robert Roth is white and that a man working with Roth is Hispanic-American.  Without any allegation of the plaintiffs' race, it is impossible to show that the Roth Defendants took any "action of the kind that would prevent non-whites from exercising the same property rights as whites."  Rivera, 928 F.2d at 607 (citation omitted).

The greater problem plaguing the amended complaint is that it does not allege that any discrimination occurred, much less intentional discrimination.  None of the facts alleged suggest, even implicitly, that the plaintiffs were mistreated on account of their race.  Nowhere do the plaintiffs claim that they were treated differently from white tenants because of their race or ethnicity.  The amended complaint's conclusory assertions that the Roth Defendants' actions were "racially biased" and "discriminatory" are insufficient -- they simply state that racial bias or discrimination occurred, or that defendants had an intention to discriminate, without alleging any facts putting the Roth Defendants on fair notice of which of their actions in fact exhibited such bias.[3]  See Harris, 572 F.3d at 72 ("[T]hreadbare recitals of the elements of a cause of action,

---

[3] In addition, allegations that the Roth Defendants' actions were "racially biased" or discriminatory do not indicate that they were intentionally so, as § 1982 requires.

12

supported by mere conclusory statements, do not suffice." (citation omitted)).  The plaintiffs cannot state a claim for discrimination without any factual amplification at least plausibly suggesting that they were treated differently on account of their race or ethnicity.

In sum, § 1982 bars only intentional discrimination in the lease of property and other property-related transactions. Because the amended complaint does not give fair notice to the Roth Defendants of any discrimination that has occurred, much less any intentional discrimination, it does not state a claim for a violation of § 1982 and must be dismissed.

3. Fourteenth Amendment

The final basis for federal jurisdiction suggested by the amended complaint is a possible claim that the Roth Defendants violated the plaintiffs' constitutional rights under the Fourteenth Amendment.[4]  As explained above, the Roth Defendants

---

[4] The amended complaint states that "the defendants have violated the Constitutional Rights of the plaintiffs, in the 14th Amendment, Title 8 of the Civil Rights Act of 1968, the Federal Fair Housing Act."  It is unclear whether this attempts to state a claim for separate violations of plaintiffs' Fourteenth Amendment rights and their rights under the FHA, or whether it assumes that the FHA is part of plaintiffs' constitutional rights.  Because courts are required to construe pleadings filed by pro se plaintiffs liberally, Sealed Plaintiff, 537 F.3d at 191, it will be assumed that the plaintiffs are attempting to allege a discrete violation of their Fourteenth Amendment rights.

argue that the plaintiffs have not alleged that any discrimination occurred.

While the Fourteenth Amendment includes several guarantees, it will be assumed that the amended complaint attempts to state a claim under the Equal Protection Clause, because it argues that the Roth Defendants' actions were "discriminatory in nature," which suggests that plaintiffs believe that they did not receive equal treatment. The Equal Protection Clause of Fourteenth Amendment provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires that the government treat all similarly situated people alike." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citation omitted) (overruled on other grounds, Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008)). As with § 1982, to state a violation of the Equal Protection Clause, the plaintiffs must allege that they were treated differently "than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).[5]

---

[5] A Fourteenth Amendment claim must allege that state action deprived plaintiffs of their rights. See Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974), for the principle that "private conduct is not subject to the requirements of the Fourteenth Amendment, no matter how discriminatory or

The Fourteenth Amendment claim is not colorable.  As the Roth Defendants point out, the plaintiffs have not alleged that any differential treatment on the basis of race occurred, whether intentional or not.  A bald allegation of racial bias is inadequate for the reasons stated above.  This is fatal to the Fourteenth Amendment claim, just as it is to the § 1982 claim.

4. Supplemental Jurisdiction

Having dismissed all of the plaintiffs' federal claims, the only remaining claims are state-law challenges to the Roth Defendants' actions, brought under Section 853 of New York Real Property Law ("NYRPL").  The plaintiffs request that supplemental jurisdiction be exercised over their state-law claims pursuant to 28 U.S.C. § 1367.

"[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."  Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998).  This litigation is in its nascent stages, long before trial, and all federal claims have been eliminated.  As a

---

wrongful").  The Roth Defendants have not moved to dismiss the amended complaint on this basis.  As the Roth Defendants have failed to raise the issue of state action, it will not be addressed further.

15

result, plaintiffs' state-law claims will be dismissed without prejudice to refiling in state court.

The plaintiffs argue that jurisdiction is proper even where a complaint rests solely on state law if the claim is "in reality based on federal law."  Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003).  Beneficial National Bank, however, describes a situation where the state law claim is completely preempted by the federal claim.  NYRPL Section 853 is not preempted by any federal law.  None of the statutes recognized as completely preemptive -- ERISA, the Labor Relations Act, and the National Bank Act -- are plausibly at issue in this eviction dispute.  Complete preemption thus does not apply.

The plaintiffs' opposition memorandum strenuously objects to the dismissal of the amended complaint because the plaintiffs believe that they were the victims of an illegal eviction and the reckless destruction of their property.  The possibility that the plaintiffs' state-law claims are meritorious is not a reason for federal courts to retain jurisdiction -- a state court can just as well find in the plaintiffs' favor.  At this early stage, where all federal claims have been dismissed, this complaint is better resolved by the state courts.

5. Leave to Amend

The Plaintiffs have not requested leave to amend, and they have previously been given leave to amend specifically for the purpose of alleging a federal claim.[6] Having been given ample opportunity to explain to the Court how the events of which they complain give rise to a claim under federal law, and having failed to do so, the plaintiffs will not be given another opportunity to attempt to state a federal claim.

## CONCLUSION

The April 15 amended complaint is dismissed with prejudice, except for its state-law claims, over which the court declines to exercise jurisdiction and which are dismissed without prejudice. The Clerk of Court shall close the case.

SO ORDERED.

Dated:   New York, New York
         September 25, 2009

_____
DENISE COTE
United States District Judge

---

[6] Because the Roth Defendants answered the complaint, the amended complaint could be filed only with the Court's permission, which was granted by the Order of March 27, 2009.

Case 1:08-cv-06503-DLC   Document 24   Filed 09/25/09   Page 18 of 18

**COPIES SENT TO:**

Ira J. Allen
711 East 231st Street
Bronx, NY 10466

Cyril Young
4125 44th Street #F9
New York, NY 11104

Milton Turner
545 Edgecombe Avenue #3C
New York, NY 10032

Richard Cisco
558 181st Street #2M
Bronx, NY 10457

Clifford E. Schwartz
Schwartz & Blumenstein
250 West 57th Street
Suite 1619
New York, NY 10107